430 U.S. 188 (1977)
MARKS ET AL.
v.
UNITED STATES.
No. 75-708.
Supreme Court of United States.
Argued November 1-2, 1976.
Decided March 1, 1977.
CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT.
Robert Eugene Smith argued the cause for petitioners. With him on the brief were Gilbert H. Deitch and Andrew Dennison.
Solicitor General Bork argued the cause for the United States. With him on the brief were Assistant Attorney General Thornburgh and Jerome M. Feit.
MR. JUSTICE POWELL delivered the opinion of the Court.
This case presents the question, not fully answered in Hamling v. United States, 418 U. S. 87 (1974), whether the *189 standards announced in Miller v. California, 413 U. S. 15 (1973), are to be applied retroactively to the potential detriment of a defendant in a criminal case. We granted certiorari, 424 U. S. 942 (1976), to resolve a conflict in the Circuits.[1]

I
Petitioners were charged with several counts of transporting obscene materials in interstate commerce, in violation of 18 U. S. C. § 1465, and with conspiracy to transport such materials, 18 U. S. C. § 371. The conduct that gave rise to the charges covered a period through February 27, 1973. *190 Trial did not begin until the following October. In the interim, on June 21, 1973, this Court decided Miller v. California, supra, and its companion cases.[2]Miller announced new standards for "isolat[ing] `hard core' pornography from expression protected by the First Amendment." 413 U. S., at 29.[3] That these new standards would also guide the future interpretation of the federal obscenity laws was clear from United States v. 12 200-ft. Reels of Film, 413 U. S. 123, 129-130, and n. 7 (1973), decided the same day as Miller. See Hamling v. United States, supra, at 105, 113-114.
Petitioners argued in the District Court that they were entitled to jury instructions not under Miller, but under the more favorable formulation of Memoirs v. Massachusetts, 383 U. S. 413 (1966) (plurality opinion).[4]Memoirs, in their *191 view, authoritatively stated the law in effect prior to Miller, by which petitioners charted their course of conduct. They focused in particular on the third part of the Memoirs test. Under it, expressive material is constitutionally protected unless it is "utterly without redeeming social value." 383 U. S., at 418. Under Miller the comparable test is "whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." 413 U. S., at 24. Miller, petitioners argue, casts a significantly wider net than Memoirs. To apply Miller retroactively, and thereby punish conduct innocent under Memoirs, violates the Due Process Clause of the Fifth Amendmentmuch as retroactive application of a new statute to penalize conduct innocent when performed would violate the Constitution's ban on ex post facto laws, Art. I, § 9, cl. 3; § 10, cl. 1. The District Court overruled these objections and instructed the jury under the Miller standards. Petitioners were convicted,[5] and a divided Court of Appeals for the Sixth Circuit affirmed.[6] 520 F. 2d 913 (1975). We now reverse.

II
The Ex Post Facto Clause is a limitation upon the powers of the Legislature, see Calder v. Bull, 3 Dall. 386 (1798), and does not of its own force apply to the Judicial Branch of government. Frank v. Mangum, 237 U. S. 309, 344 (1915). But the principle on which the Clause is basedthe notion that persons have a right to fair warning of that conduct which will give rise to criminal penaltiesis fundamental to our concept of constitutional liberty. See United States v. *192 Harriss, 347 U. S. 612, 617 (1954); Lanzetta v. New Jersey, 306 U. S. 451, 453 (1939). As such, that right is protected against judicial action by the Due Process Clause of the Fifth Amendment. In Bouie v. City of Columbia, 378 U. S. 347 (1964), a case involving the cognate provision of the Fourteenth Amendment, the Court reversed trespass convictions, finding that they rested on an unexpected construction of the state trespass statute by the State Supreme Court:
"[A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the Constitution forbids. . . . If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction." Id., at 353-354.
Similarly, in Rabe v. Washington, 405 U. S. 313 (1972), we reversed a conviction under a state obscenity law because it rested on an unforeseeable judicial construction of the statute. We stressed that reversal was mandated because affected citizens lacked fair notice that the statute would be thus applied.
Relying on Bouie, petitioners assert that Miller and its companion cases unforeseeably expanded the reach of the federal obscenity statutes beyond what was punishable under Memoirs. The Court of Appeals rejected this argument. It notedcorrectlythat the Memoirs standards never commanded the assent of more than three Justices at any one time, and it apparently concluded from this fact that Memoirs never became the law. By this line of reasoning, one must judge whether Miller expanded criminal liability by looking not to Memoirs but to Roth v. United States, 354 *193 U. S. 476 (1957), the last comparable plenary decision of this Court prior to Miller in which a majority united in a single opinion announcing the rationale behind the Court's holding.[7] Although certain language in Roth formed the basis for the plurality's formulation in Memoirs, Roth's test for distinguishing obscenity from protected speech was a fairly simple one to articulate: "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." 354 U. S., at 489. If indeed Roth, not Memoirs, stated the applicable law prior to Miller, there would be much to commend the apparent view of the Court of Appeals that Miller did not significantly change the law.
But we think the basic premise for this line of reasoning is faulty. When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . ." Gregg v. Georgia, 428 U. S. 153, 169 n. 15 (1976) (opinion of STEWART, POWELL, and STEVENS, JJ.). Three Justices joined in the controlling opinion in Memoirs. Two others, Mr. Justice Black and Mr. Justice Douglas, concurred on broader grounds in reversing the judgment below. 383 U. S., at 421, 424. They reiterated their well-known position that the First Amendment provides an absolute shield against governmental action aimed at suppressing obscenity. MR. JUSTICE STEWART also concurred in the judgment, based on his view that only "hardcore pornography" may be suppressed. Id., at 421. See Ginzburg v. United States, 383 U. S. 463, 499 (1966) *194 (STEWART, J., dissenting). The view of the Memoirs plurality therefore constituted the holding of the Court and provided the governing standards. Indeed, every Court of Appeals that considered the question between Memoirs and Miller so read our decisions.[8] Materials were deemed to be constitutionally protected unless the prosecution carried the burden of proving that they were "utterly without redeeming social value," and otherwise satisfied the stringent Memoirs requirements.
Memoirs therefore was the law. Miller did not simply clarify Roth; it marked a significant departure from Memoirs. And there can be little doubt that the third test announced in Millerwhether the work "lacks serious literary, artistic, political, or scientific value"expanded criminal liability. The Court in Miller expressly observed that the "utterly without redeeming social value" test places on the prosecutor "a burden virtually impossible to discharge under our criminal standards of proof." 413 U. S., at 22. Clearly it was thought that some conduct which would have gone unpunished under Memoirs would result in conviction under Miller.
*195 This case is not strictly analogous to Bouie. The statutory language there was "narrow and precise," 378 U. S., at 352, and that fact was important to our holding that the expansive construction adopted by the State Supreme Court deprived the accused of fair warning. In contrast, the statute involved here always has used sweeping language to describe that which is forbidden.[9] But precisely because the statute is sweeping, its reach necessarily has been confined within the constitutional limits announced by this Court. Memoirs severely restricted its application. Miller also restricts its application beyond what the language might indicate, but Miller undeniably relaxes the Memoirs restrictions.[10] The effect is the same as the new construction in Bouie. Petitioners, engaged in the dicey business of marketing films subject to possible challenge, had no fair warning that their products might be subjected to the new standards.[11]
*196 We have taken special care to insist on fair warning when a statute regulates expression and implicates First Amendment values. See, e. g., Buckley v. Valeo, 424 U. S. 1, 40-41 (1976); Smith v. Goguen, 415 U. S. 566, 573 (1974). Section 1465 is such a statute. We therefore hold, in accordance with Bouie, that the Due Process Clause precludes the application to petitioners of the standards announced in Miller v. California, to the extent that those standards may impose criminal liability for conduct not punishable under Memoirs. Specifically, since the petitioners were indicted for conduct occurring prior to our decision in Miller, they are entitled to jury instructions requiring the jury to acquit unless it finds that the materials involved are "utterly without redeeming social value."[12] At the same time we reaffirm our *197 holding in Hamling v. United States, 418 U. S., at 102, that "any constitutional principle enunciated in Miller which would serve to benefit petitioners must be applied in their case."[13]
Accordingly, the judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.[14]
So ordered.
MR. JUSTICE BRENNAN, with whom MR. JUSTICE STEWART and MR. JUSTICE MARSHALL join, concurring in part and dissenting in part.
I join the opinion of the Court insofar as it holds that the retroactive application of the definition of obscenity announced in Miller v. California, 413 U. S. 15 (1973), to the potential detriment of a criminal defendant, violates the Due Process Clause of the Fifth Amendment. See Bouie v. City of Columbia, 378 U. S. 347 (1964).
I cannot join, however, in the judgment remanding the case for a new trial. Petitioners were convicted of transporting obscene materials in interstate commerce in violation of 18 U. S. C. § 1465. I adhere to the view that this statute is "`clearly overbroad and unconstitutional on its face.'" See, e. g., Cangiano v. United States, 418 U. S. 934, 935 (1974) (BRENNAN, J., dissenting), quoting United States v. Orito, 413 *198 U. S. 139, 148 (1973) (BRENNAN, J., dissenting). I therefore would simply reverse.
MR. JUSTICE STEVENS, concurring in part and dissenting in part.
There are three reasons which, in combination, persuade me that this criminal prosecution is constitutionally impermissible. First, as the Court's opinion recognizes, this "statute regulates expression and implicates First Amendment values." Ante, at 196. However distasteful these materials are to some of us, they are nevertheless a form of communication and entertainment acceptable to a substantial segment of society; otherwise, they would have no value in the marketplace. Second, the statute is predicated on the somewhat illogical premise that a person may be prosecuted criminally for providing another with material he has a constitutional right to possess. See Stanley v. Georgia, 394 U. S. 557. Third, the present constitutional standards, both substantive and procedural,[*] which apply to these prosecutions are so intolerably vague that evenhanded enforcement of the law is a virtual impossibility. Indeed, my brief experience on the Court has persuaded me that grossly disparate treatment of similar offenders is a characteristic of the criminal enforcement of obscenity law. Accordingly, while I agree with everything said in the Court's opinion, I am unable to join its judgment remanding the case for a new trial.
NOTES
[1] Two Courts of Appeals have found instructions derived from Miller appropriate in prosecutions based on conduct occurring before the Miller decision came down: United States v. Marks, 520 F. 2d 913 (CA6 1975) (the instant case); and United States v. Friedman, 528 F. 2d 784 (CA10 1976), cert. pending, No. 75-1663. Three Courts of Appeals have reversed convictions where Miller instructions were given by the District Court: United States v. Wasserman, 504 F. 2d 1012 (CA5 1974); United States v. Jacobs, 513 F. 2d 564 (CA9 1974); United States v. Sherpix, Inc., 168 U. S. App. D. C. 121, 512 F. 2d 1361 (1975).

In two earlier cases both conduct and trial occurred prior to Miller, and the jury instructions were derived from Memoirs v. Massachusetts, 383 U. S. 413 (1966) (plurality opinion). United States v. Thevis, 484 F. 2d 1149 (CA5 1973) (Thevis I), cert. denied, 418 U. S. 932 (1974); United States v. Palladino, 490 F. 2d 499 (CA1 1974). The Courts of Appeals there, foreshadowing to some extent our later decision in Hamling v. United States, held that Miller did not void all Memoirs-based convictions, but that on review appellants were entitled to all the benefits of both the Miller and Memoirs standards. See Hamling, 418 U. S., at 102. In later cases presenting similar facts, the Fifth Circuit has applied its holding in Thevis I. See, e. g., United States v. Linetsky, 533 F. 2d 192 (1976); United States v. Thevis, 526 F. 2d 989 (1976) (Thevis II), cert. denied, 429 U. S. 928 (1976). See also United States v. Hill, 500 F. 2d 733 (CA5 1974), cert. denied, 420 U. S. 952 (1975). And the Ninth Circuit, following Hamling, has reached the same result. United States v. Cutting, 538 F. 2d 835 (1976) (en banc), cert. denied, 429 U. S. 1052 (1977).
[2] Paris Adult Theatre I v. Slaton, 413 U. S. 49 (1973); Kaplan v. California, 413 U. S. 115 (1973); United States v. 12 200-ft. Reels of Film, 413 U. S. 123 (1973); United States v. Orito, 413 U. S. 139 (1973).
[3] Miller held:

"The basic guidelines for the trier of fact must be: (a) whether `the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest . . . ; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." 413 U. S., at 24.
Under part (b) of the test, it is adequate if the statute, as written or as judicially construed, specifically defines the sexual conduct, depiction of which is forbidden. The Court in Miller offered examples of what a State might constitutionally choose to regulate:
"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.
"(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." Id., at 25.
[4] The plurality in Memoirs held that "three elements must coalesce" if material is to be found obscene and therefore outside the protection of the First Amendment:

"[I]t must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." 383 U. S., at 418.
[5] Petitioner American News Co., Inc., was convicted only on the conspiracy charge. The other four petitioners were convicted of conspiracy and also on seven of the eight substantive counts.
[6] Both in its brief and at oral argument in this Court the United States contended that petitioners' convictions under the Miller standards were improper, and consequently the Government does not defend the judgment of the Court of Appeals on this issue but agrees with petitioners that their convictions should not stand.
[7] Shortly after Memoirs, in response to the divergence of opinion among Members of the Court, the Court began the practice of disposing of obscenity cases in brief per curiam decisions. Redrup v. New York, 386 U. S. 767 (1967), was the first. At least 31 cases were decided in this fashion. They are collected in Paris Adult Theatre I v. Slaton, 413 U. S., at 82-83, n. 8 (BRENNAN, J., dissenting).
[8] See, e. g., Books, Inc. v. United States, 358 F. 2d 935 (CA1 1966), rev'd per curiam, 388 U. S. 449 (1967); United States v. 35 Mm. Motion Picture Film, 432 F. 2d 705 (CA2 1970), cert. dismissed sub nom. United States v. Unicorn Enterprises, Inc., 403 U. S. 925 (1971); United States v. Ten Erotic Paintings, 432 F. 2d 420 (CA4 1970); United States v. Groner, 479 F. 2d 577 (CA5) (en banc) (the seven dissenting judges and one judge concurring in the resultconstituting a majority on this issuefound that Memoirs stated the governing standard), vacated and remanded for further consideration in light of Miller, 414 U. S. 969 (1973); United States v. Pellegrino, 467 F. 2d 41 (CA9 1972); South-eastern Promotions, Ltd. v. Oklahoma City, 459 F. 2d 282 (CA10 1972); Huffman v. United States, 152 U. S. App. D. C 238, 470 F. 2d 386 (1971), conviction reversed on other grounds upon rehearing after Miller, 163 U. S. App. D. C. 417, 502 F. 2d 419 (1974). Cf. Grove Press, Inc. v. City of Philadelphia, 418 F. 2d 82 (CA3 1969); Cinecom Theaters Midwest States, Inc. v. City of Fort Wayne, 473 F. 2d 1297 (CA7 1973); Luros v. United States, 389 F. 2d 200 (CA8 1968).
[9] The statute provides in pertinent part:

"Whoever knowingly transports in interstate or foreign commerce for the purpose of sale or distribution any obscene, lewd, lascivious, or filthy book, pamphlet, picture, film, paper, letter, writing, print, silhouette, drawing, figure, image, cast, phonograph recording, electrical transcription or other article capable of producing sound or any other matter of indecent or immoral character, shall be fined not more than $5,000 or imprisoned not more than five years, or both." 18 U. S. C. § 1465.
[10] For this reason, the instant case is different from Rose v. Locke, 423 U. S. 48 (1975), where the broad reading of the statute at issue did not upset a previously established narrower construction.
[11] In Hamling we rejected a challenge based on Bouie v. City of Columbia, ostensibly similar to the challenge that is sustained here. 418 U. S., at 115-116. But the similarity is superficial only. There the petitioners focused on part (b) of the Miller test. See n. 3, supra. They argued that their convictions could not stand because Miller requires that the categories of material punishable under the statute must be specifically enumerated in the statute or in authoritative judicial construction. No such limiting construction had been announced at the time they engaged in the conduct that led to their convictions. We held that this made out no claim under Bouie, for part (b) did not expand the reach of the statute. "[T]he enumeration of specific categories of material in Miller which might be found obscene did not purport to make criminal, for the purpose of 18 U. S. C. § 1461, conduct which had not previously been thought criminal." 418 U. S., at 116.

For the reasons noted in text, the same cannot be said of part (c) of the Miller test, shifting from "utterly without redeeming social value" to "lacks serious literary, artistic, political or scientific value." This was implicitly recognized by the Court in Hamling itself. There the trial took place before Miller, and the jury had been instructed in accordance with Memoirs. Its verdict necessarily meant that it found the materials to be utterly without redeeming social value. This Court examined the record and determined that the jury's verdict "was supported by the evidence and consistent with the Memoirs formulation of obscenity." 418 U. S., at 100. We did not avoid that inquiry on the ground that Memoirs had no relevance, as we might have done if Miller applied retroactively in all respects.
[12] The Court of Appeals stated, apparently without viewing the materials, 520 F. 2d, at 923 n. 1 (McCree, J., dissenting), that in its opinion the materials here were obscene under either Memoirs or Miller. 520 F. 2d, at 922. Such a conclusion, absent other dependable means of knowing the character of the materials, is of dubious value. But even if we accept the court's conclusion, under these circumstances it is not an adequate substitute for the decision in the first instance of a properly instructed jury, as to this important element of the offense under 18 U. S. C. § 1465.
[13] The Court of Appeals apparently thought that our remand in Miller and the companion cases necessarily meant that Miller standards were fully retroactive. 520 F. 2d, at 920. But the passage from Hamling quoted in the text, which simply reaffirms a principle implicit in Miller, makes it clear that the remands carried no such implication. Our 1973 cases were remanded for the courts below to apply the "benefits" of Miller. See n. 3, supra.
[14] In view of our disposition of the case, we have no occasion to reach the other questions presented in the petition.
[*] How, for example, can an appellate court intelligently determine whether a jury has properly identified the relevant community standards?