Michael C. ARMSTRONG,
Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 26A05–0401–CR–12.

Court of Appeals of Indiana.

Nov. 23, 2004.

ment of the crime. Rather, proof of a valid license is a defense. *See Washington v. State,* 517 N.E.2d 77 (Ind.1987).

John D. Clouse, Ivan A. Arnaez, Clouse Law Offices, Evansville, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.[1]

Michael C. Armstrong ("Armstrong") was charged in the Gibson Superior Court with failure to stop after an accident resulting in death, a Class C felony.[2] Armstrong moved to dismiss the charge. Following a hearing, the trial court denied the motion to dismiss. Thereafter, the trial court certified the matter for interlocutory appeal, and we accepted jurisdiction pursuant to Appellate Rule 14(B). Armstrong raises one issue: whether he was involved in an accident for purposes of Indiana Code section 9–26–1–1. Concluding that Armstrong was involved in an accident, but that our interpretation of the statute should not be applied retroactively to Armstrong, we reverse.

## Facts and Procedural History

On May 31, 2003, Craig Mobley ("Mobley") was a passenger in a 1998 Ford Expedition driven by Armstrong. As the two headed south on County Road 400W in Fort Branch, Indiana, Mobley jumped out of the vehicle while it was moving. Armstrong immediately believed that Mobley had been injured because he did not move once he hit the ground. However, Armstrong did not stop at the scene, nor did he use his cell phone to call for help. Instead, he continued driving south.

A short time later, the property owner discovered Mobley lying motionless in his yard near the road and called 911. Approximately one hour after emergency responders had arrived at the scene, Armstrong returned with his father and informed police that Mobley had jumped out of his vehicle while it was in motion. Mobley later died as a result of his injuries.

On June 16, 2003, the State charged Armstrong with failure to stop after an accident resulting in death, a Class C felony. On October 15, 2003, Armstrong filed a motion to dismiss, citing *Honeycutt v. State*, 760 N.E.2d 648 (Ind.Ct.App.2001), and arguing that Indiana Code section 9–26–1–1 did not apply because Mobley had

---

1. We heard oral argument in this case at the Indiana University School of Law–Indianapolis on September 20, 2004. We extend our appreciation to the students, faculty, and staff for their interest and hospitality and to counsel for their written and oral presentations.

2. Ind.Code § 9–26–1–1 (2004); Ind.Code § 9–26–1–8(a)(2) (2004).

not been struck by Armstrong's vehicle. The trial court held a hearing on the motion on November 14, 2003. On December 17, 2003, the trial court issued a detailed order denying Armstrong's motion to dismiss. The trial court certified the order for interlocutory appeal and this court accepted jurisdiction on February 20, 2004.

### Discussion and Decision

■ Armstrong argues that the trial court improperly denied his motion to dismiss the charge against him because Indiana Code section 9–26–1–1 does not apply. Specifically, he argues that he was not "involved in an accident" for purposes of the statute because his vehicle did not strike Mobley.

> The interpretation of a statute is a question of law which we review de novo. Under a de novo review standard, we owe no deference to the trial court's legal conclusions. If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. However, when the language is susceptible to more than one construction, we must construe the statute in accord with the apparent legislative intent.

*Woodward v. State,* 798 N.E.2d 260, 262 (Ind.Ct.App.2003), *trans. denied* (quoting *State v. Gibbs,* 769 N.E.2d 594, 596 (Ind. Ct.App.2002), *trans. denied* ).

■ The best evidence of legislative intent is the language of the statute, giving all words their plain and ordinary meaning unless otherwise indicated by the statute. *Brown v. State,* 790 N.E.2d 1061, 1063–64 (Ind.Ct.App.2003). We will presume that the legislature intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result. *Id.* at 1064. We must also strictly construe penal statutes against the State to avoid enlarging them beyond the fair meaning of the language used. *Hatcher v. State,* 762 N.E.2d 170, 172–73 (Ind.Ct.App.

2002), *trans. denied.* Though penal laws are to receive a strict construction, they are not to be construed so strictly as to defeat the obvious or expressed intent of the legislature. *Fuller v. State,* 752 N.E.2d 235, 238 (Ind.Ct.App.2001).

■ Undefined words in a statute are given their plain, ordinary, and usual meaning. Ind.Code § 1–1–4–1(1) (2000); *State v. D.M.Z.,* 674 N.E.2d 585, 588 (Ind. Ct.App.1996), *trans. denied.* In determining the plain and ordinary meaning of a statutory term, courts may use English language dictionaries as well as consider the relationship with other words and phrases. *D.M.Z.,* 674 N.E.2d at 588. Statutes are examined and interpreted as a whole and the language itself is scrutinized, including the grammatical structure of the clause or sentence at issue. *Clifft v. Ind. Dep't of State Revenue,* 660 N.E.2d 310, 316 (Ind.1995). Within this analysis, we give words their common and ordinary meaning, without "overemphasizing a strict literal or selective reading of individual words." *Id.* (citations omitted).

Indiana Code section 9–26–1–1 provides as follows:

> The driver of a vehicle involved in an accident that results in the injury or death of a person shall do the following:
>
> (1) Immediately stop the vehicle at the scene of the accident or as close to the accident as possible in a manner that does not obstruct traffic more than is necessary.
>
> (2) Immediately return to and remain at the scene of the accident until the driver does the following:
>
>> (A) Gives the driver's name and address and the registration number of the vehicle the driver was driving.
>>
>> (B) Upon request, exhibits the driver's license of the driver to the following:

(i) The person struck.

(ii) The driver or occupant of or person attending each vehicle involved in the accident.

(C) Determines the need for and renders reasonable assistance to each person injured in the accident, including the removal or the making of arrangements for the removal of each injured person to a physician or hospital for medical treatment.

(3) Immediately give notice of the accident by the quickest means of communication to one (1) of the following:

(A) The local police department if the accident occurs within a municipality.

(B) The office of the county sheriff or the nearest state police post if the accident occurs outside a municipality.

(4) Within ten (10) days after the accident, forward a written report of the accident to the state police department.

Ind.Code § 9-26-1-1 (2004).

Armstrong argues that he was not "involved in an accident" because his vehicle did not strike Mobley. The phrase "involved in an accident" and the word "accident" are not specifically defined in the statute. Undefined words in a statute are given their plain, ordinary, and usual meaning. Ind.Code § 1-1-4-1(1) (2000). "Accident" is broadly defined as "an unforeseen and unplanned event or circumstance" and "an unfortunate event resulting especially from carelessness or ignorance." *See* Merriam Webster Online Dictionary *available at http:// www.m-w.com* (last visited October 28, 2004). "Accident" is also defined as an "unexpected and undesirable event, especially one resulting in damage or harm" and as "[a]n unforeseen incident." *See* The American Heritage Dictionary of the English Language (4th Ed.2000) *available at http://www.bartelby.com* (last visited October 28, 2004). Mobley's sudden exit from Armstrong's moving vehicle was clearly an "unexpected and undesirable event" resulting in harm, and falls within the plain and ordinary meaning of the term accident.

In addition, we note that in another chapter of Title 9, the legislature defined "fatal accident" in the context of implied consent laws as "an accident, a collision, or other occurrence that involves at least one [ ] vehicle" and results in death or bodily injury that gives a law enforcement officer reason to believe that the death of at least one person is imminent. Ind.Code § 9-30-7-1(b) (2004). This definition clearly contemplates that an incident other than a collision could be a "fatal accident" for purposes of that statute.

In interpreting the predecessor of Indiana Code section 9-26-1-1, our supreme court concluded that the purpose of the statute is to provide prompt aid for persons who are injured or whose property is damaged and to sufficiently establish the identity of the parties so that they and police authorities may know with whom to deal in matters growing out of the accident. *Runyon v. State,* 219 Ind. 352, 357, 38 N.E.2d 235, 237 (1941). Limiting "accidents" to only those incidents where a person or vehicle is struck undercuts these purposes, as the facts of this case clearly demonstrate.

■ We also observe that a driver's knowledge of the fact that an accident with injury has occurred is a necessary element of the proof in a prosecution for failure to stop. *State v. Gradison,* 758 N.E.2d 1008, 1011 (Ind.Ct.App.2001) (citing *Micinski v. State,* 487 N.E.2d 150, 152-53 (Ind.1986) (construing substantially similar predecessor statute)). However, the driver need not have actual knowledge that an accident has resulted in injury to be convicted under the statute. Id. "Where conditions

were such that the driver should have known that an accident occurred or should have reasonably anticipated that the accident resulted in injury to a person, the requisite knowledge is present." *Id.* (quoting *Micinski,* 487 N.E.2d at 153). Here, Armstrong admitted to police officers at the scene that he believed Mobley was injured because he did not move once he hit the ground.

Other courts in other jurisdictions have come to the same conclusion when interpreting substantially similar statutes. These courts have held that, for purposes of failure to stop or "hit and run" statutes, an accident occurred in circumstances other than a collision between the driver's vehicle and another vehicle or person. *See Wylie v. State,* 797 P.2d 651, 658 (Alaska Ct.App.1990) (driver whose wife intentionally jumped from his moving vehicle was involved in accident); *State v. Rodgers,* 184 Ariz. 378, 909 P.2d 445, 448 (App.1995) (driver whose passenger deliberately jumped from his moving car was involved in an accident); *State v. Carpenter,* 334 N.W.2d 137, 138–40 (Iowa 1983) (driver whose intoxicated girlfriend jumped from his moving pickup truck was involved in an accident); *Comstock v. State,* 82 Md.App. 744, 573 A.2d 117, 122 (1990) (driver was involved in an accident where his sudden lane change caused another driver to swerve and collide with oncoming traffic); *State v. Slocum,* 112 A.D.2d 641, 492 N.Y.S.2d 159, 160 (1985) (driver whose passenger jumped from the moving vehicle and died as a result was involved in an accident); *State v. Cameron,* 596 N.W.2d 49, 54 (S.D.1999) (single vehicle rollover resulting in injury to passengers was an accident); *Sheldon v. State,* 100 S.W.3d 497, 503 (Tex.App.—Austin, 2003) (driver whose passenger intentionally jumped from moving vehicle was involved in an accident); *Smith v. Commonwealth,* 8 Va. App. 109, 379 S.E.2d 374, 377 (1989) (driv-

er was involved in an accident when three passengers riding on a truck's bumper fell from the truck as it was moving); *State v. Silva,* 106 Wash.App. 586, 24 P.3d 477, 482 (2001) (driver was involved in an accident within meaning of statute when a police officer was injured while jumping free of his moving vehicle after the officer reached in to turn off the ignition).

Yet Armstrong directs us to *Honeycutt v. State,* where a panel of this court, including this writer, determined that the scope of Indiana Code section 9–26–1–1 should be limited to "incidents involving a vehicle striking something that causes injury to someone, or a vehicle striking a person and causing injury." 760 N.E.2d at 651. In *Honeycutt,* three brothers were driving home together after visiting several bars. *Id.* at 649. The three began to argue, and at one point, one of the brothers fell or was pushed out of the moving vehicle and suffered a broken leg. *Id.* The driver stopped the vehicle and the injured brother asked the driver for help getting out of the street. The driver then pulled the injured brother out of the street and placed him in a nearby driveway. *Id.* The injured brother did not request further assistance. *Id.* The driver tried to convince the injured brother to get back in the car to go home, but the injured brother refused, saying that he needed an ambulance. *Id.* The driver and the third brother then left the injured brother there, and drove the remaining three blocks to their home. *Id.* Upon these facts, *Honeycutt* held that there was insufficient evidence to support the driver's conviction of failure to stop after an accident resulting in serious injury.

 In so holding, *Honeycutt* placed significant emphasis on the fact that the statute includes the phrase "person struck." Ind.Code § 9–26–1–1(2)(B)(i).

However, we note that the phrase "person struck" appears only in subsection (2)(B), which requires a driver involved in an accident to provide certain identification information when requested. As discussed above, nothing inherent in the term "accident" suggests that it encompasses only incidents where someone or something is struck. Upon closer examination, we believe the term "accident" is the bellwether for all of the duties imposed by Indiana Code section 9–26–1–1, and includes single vehicle incidents involving passengers who fall, jump, or are pushed from moving vehicles and suffer injuries as a result. We therefore hold that *all* of the duties imposed by the statute apply to a "driver of a vehicle involved in an accident." With our interpretation, we respectfully decline to follow *Honeycutt.*

 In declining to follow *Honeycutt,* we acknowledge that our interpretation is so markedly different as to cause concerns about retroactive application to Armstrong. Constitutional provisions against ex post facto laws apply only to enactments by legislative bodies. *Bryant v. State,* 446 N.E.2d 364, 365 (Ind.Ct.App. 1983) (citing *Marks v. United States,* 430 U.S. 188, 192, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977), *Sumpter v. State,* 264 Ind. 117, 125, 340 N.E.2d 764, 770 (1976)). However, this court has recognized that the principle underlying the prohibition of ex post facto laws "may limit the retroactive application of judicial decisions interpreting statutes." *Id.* The fundamental concept underlying the prohibition of retroactivity, whether by way of the due process clause or the prohibition against ex post facto laws, is that of fair notice to the defendant at the time he acts that his behavior is deemed criminal. *Id.* at 365–66. "If a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, [the construction] must not be given retroactive effect." *Bowie v. City of Columbia,* 378 U.S. 347, 354, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (internal quotation marks omitted).

We note that transfer was not sought in *Honeycutt.* Thus, the law expressed prior to the conduct at issue here included no word from our supreme court indicating that, for purposes of the failure-to-stop statute, an "accident" requires that there be a "person struck." However, we believe that our interpretation, while correct, is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." *Id.* We therefore decline to apply our interpretation to Armstrong.

For all these reasons, when Mobley jumped from Armstrong's moving vehicle and was injured as a result, Armstrong was involved in an accident for purposes of Indiana Code section 9–26–1–1, and the duties under that statute were triggered. Armstrong failed to immediately stop and remain at the scene as required by Indiana Code section 9–26–1–1(1) & (2). While the trial court properly denied Armstrong's motion to dismiss under our interpretation of Indiana Code section 9–26–1–1, this interpretation should not be applied to Armstrong retroactively, and we reverse the trial court and grant Armstrong's motion to dismiss under *Honeycutt.*

Reversed.

BARNES, J., and CRONE, J., concur.