ATTORNEYS FOR APPELLANT
John D. Clouse
Ivan A. Arnaez
Clouse Law Offices
Evansville, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

### In the
# Indiana Supreme Court

No. 26S05-0606-CR-212

MICHAEL C. ARMSTRONG,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Interlocutory Appeal from the Gibson Superior Court, No. 26D01-0306-FC-0008
The Honorable Earl G. Penrod, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 26A05-0401-CR-12

**June 15, 2006**

**Rucker, Justice.**

We hold today that a driver of a vehicle who leaves the scene of an accident resulting in injury or death may be held criminally responsible even if the driver's vehicle did not strike the injured or deceased party.

**Facts and Procedural History**

In the early evening hours of May 31, 2003 Michael C. Armstrong was driving his Ford Expedition along County Road 400 West in Gibson County. Craig Mobley sat in the passenger seat. At some point Mobley apparently opened the passenger door and jumped from the vehicle while it was in motion. Because Mobley did not move after hitting the roadway, Armstrong believed that he was injured. However, Armstrong did not stop at the scene nor did he use his cellular telephone to call for help. Rather, according to Armstrong, he "freaked out and did not know what to do and kept on driving and later called his father to tell him [what happened]." Appellant's App. at 23. In the meantime a property owner discovered Mobley lying motionless in his yard near the roadway and called 911. About an hour later Armstrong returned to the scene with his father. Police had already arrived along with emergency personnel. Armstrong gave police a statement recounting the events as set forth above. Mobley later died as a result of his injuries.

The State charged Armstrong with failure to stop after an accident resulting in death, a Class C felony. See Ind. Code § 9-26-1-1. Armstrong filed a motion to dismiss arguing that the statute did not apply to him because Mobley had not been struck by Armstrong's vehicle. After conducting a hearing the trial court entered an order denying the motion. At Armstrong's request the trial court certified its order for interlocutory appeal and the Court of Appeals accepted jurisdiction. Arguing that an earlier Court of Appeals opinion interpreting Indiana Code section 9-26-1-1 entitled him to relief, see Honeycutt v. State, 760 N.E.2d 648 (Ind. Ct. App. 2001), trans. not sought, Armstrong contended the trial court erred in denying his motion to dismiss. The Court of Appeals interpreted Indiana Code section 9-26-1-1 differently and declined to follow Honeycutt but noted, "we acknowledge that our interpretation is so markedly different as to cause concerns about retroactive application to Armstrong." Armstrong v. State, 818 N.E.2d 93, 99 (Ind. Ct. App. 2004). Accordingly the Court of Appeals declared that although the trial court properly interpreted the statute, "this interpretation should not be applied to Armstrong retroactively . . . ." Id. The Court of Appeals thus reversed the judgment of the trial court and granted Armstrong's motion to dismiss. We now grant transfer and adopt that portion of the

Court of Appeals opinion interpreting Indiana Code section 9-26-1-1. But because we have a different view on the question of retroactivity, we now affirm the judgment of the trial court.

## Discussion

At the time of Armstrong's arrest and conviction Indiana Code section 9-26-1-1 provided in pertinent part:

> The driver of a vehicle *involved in an accident* that results in the injury or death of a person shall do the following:
>
> > (1) Immediately stop the vehicle at the scene of the accident or as close to the accident as possible in a manner that does not obstruct traffic more than is necessary.
> >
> > (2) Immediately return to and remain at the scene of the accident until the driver does the following:
> >
> > > (A) Gives the driver's name and address and the registration number of the vehicle the driver was driving.
> > >
> > > (B) Upon request, exhibits the driver's license of the driver to the following:
> > >
> > > > (i) *The person struck.*
> > > > (ii) The driver or occupant of or person attending each vehicle involved in the accident.
> > >
> > > (C) Determines the need for and renders reasonable assistance to each person injured in the accident, including the removal or the making of arrangements for the removal of each injured person to a physician or hospital for medical treatment.

(Emphases added).[1] A violation of this statute is a Class A misdemeanor but is elevated to a Class C felony if the accident involves the death of a person. I.C. § 9-26-1-8.

In Honeycutt, three brothers were driving home together after visiting several bars. They began to argue and at one point one of the brothers either fell or was pushed out of the moving

---

[1] The statute was amended by Pub. L. No. 210-2005, § 50. However the amendment is not relevant here and has no effect upon our analysis.

vehicle and suffered a broken leg. The driving brother stopped the vehicle and the injured brother asked for help getting out of the street. The driving brother then pulled the injured brother out of the street and placed him in a nearby driveway. The driving brother tried to convince the injured brother to get back in the car to go home, but the injured brother refused, saying he needed an ambulance. Leaving the injured brother there, the driving brother and the third brother left the scene and went to their home, which was three blocks away. The driving brother was later charged and convicted of failure to stop after an accident resulting in serious bodily injury. On review, the Court of Appeals placed significant emphasis upon the phrase "person struck" and held that "the legislature limits the scope of this statute to incidents involving a vehicle striking something that causes injury to someone, or a vehicle striking a person and causing injury." Honeycutt, 760 N.E.2d at 651. Because there was no evidence that the injured brother was struck by a vehicle, the court reversed the defendant's conviction, declaring that Indiana Code section 9-26-1-1 did not apply.

In the case before us the Court of Appeals focused not upon the phrase "person struck" but rather upon whether Armstrong was "involved in an accident." Armstrong, 818 N.E.2d at 98-99. As the court put it:

> The phrase "involved in an accident" and the word "accident" are not specifically defined in the statute. Undefined words in a statute are given their plain, ordinary, and usual meaning. "Accident" is broadly defined as "an unforeseen and unplanned event or circumstance" and "an unfortunate event resulting especially from carelessness or ignorance." "Accident" is also defined as an "unexpected and undesirable event, especially one resulting in damage or harm" and as "[a]n unforeseen incident." Mobley's sudden exit from Armstrong's moving vehicle was clearly an "unexpected and undesirable event" resulting in harm, and falls within the plain and ordinary meaning of the term accident. . . . [N]othing inherent in the term "accident" suggests that it encompasses only incidents where someone or something is struck. Upon closer examination, we believe the term "accident" is the bellwether for all of the duties imposed by Indiana Code section 9-26-1-1 . . . . We therefore hold that *all* of the duties imposed by the statute apply to a "driver of a vehicle involved in an accident."

4

Id. at 97, 99 (citations omitted). We agree. The duties the statute imposes upon a driver are triggered regardless of whether the driver's vehicle struck anyone or anything. We therefore adopt that portion of the Court of Appeals opinion interpreting Indiana Code section 9-26-1-1. In so doing we disapprove the contrary interpretation of the statute announced in Honeycutt. As indicated earlier however we have a different view than our colleagues on the question of whether to apply this correct interpretation of the statute to the defendant in this case.

Armstrong suggests that he did not know that his actions were criminal because he could not have foreseen that Honeycutt may have been incorrectly decided. According to Armstrong, applying the current interpretation of the statute to his conduct "comes dangerously similar to our ban on ex post facto laws under the Federal and State Constitutions." Br. In Opposition To Pet. To Trans. at 1.

Article I of the United States Constitution provides that neither Congress nor any state may pass any ex post facto law. See U.S. Const. art. I, § 9; U.S. Const. art. I, § 10. An ex post facto law is one which applies retroactively to disadvantage an offender's substantial rights. See Weaver v. Graham, 450 U.S. 24, 29-30 (1981). Over two hundred years ago, Justice Samuel Chase explained that "[t]he Legislature may enjoin, permit, forbid, and punish; they may declare new crimes; and establish rules of conduct for all its citizens in future cases; they may command what is right, and prohibit what is wrong; but they cannot change innocence into guilt; or punish innocence as a crime . . . ." Calder v. Bull, 3 U.S. 386, 388 (1798). But, as is clear from the Constitutional text, "[t]he Ex Post Facto Clause is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government." Marks v. United States, 430 U.S. 188, 191 (1977); see also Rogers v. Tennessee, 532 U.S. 451, 462 (2001) ("[T]he Ex Post Facto Clause does not apply to judicial decisionmaking."). Nonetheless, the prohibition on ex post facto laws embodies "one of the most widely held value-judgment[s] in the entire history of human thought," that is, that there should be no punishment without a law authorizing it. Rogers, 532 U.S. at 468 (Scalia, J., dissenting) (quotation omitted). This principle—"the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties"—"is fundamental to our concept of constitutional liberty." Marks, 430 U.S. at 191; see also United States v. Harriss, 347 U.S. 612, 617 (1954); Lanzetta v. New

Jersey, 306 U.S. 451, 453 (1939). Therefore, the Due Process Clause of the Fifth Amendment, made applicable to the states by the Fourteenth Amendment, protects offenders from judicial decisions that retroactively alter the import of a law to negatively affect the offender's rights without providing fair warning of that alteration. See Marks, 430 U.S. at 192.

Bouie v. City of Columbia first explained the similarity between ex post facto laws passed by a legislature and judicial decisions that, if applied retroactively, impact due process rights. Bouie involved a "sit-in" by civil rights activists at a lunch counter in South Carolina. 378 U.S. 347, 348 (1964). South Carolina's criminal trespass statute prohibited "[e]ntry upon the lands of another . . . after notice from the owner" prohibiting such entry. Id. at 349-50 (quoting S.C. Code § 16-386 (1952 & Cum. Supp. 1960)). However, the South Carolina Supreme Court "construed the statute to cover not only the act of entry on the premises of another after receiving notice not to enter, but also the act of remaining on the premises of another after receiving notice to leave." Id. at 350. The United States Supreme Court held that the South Carolina Supreme Court's "unforeseeable judicial enlargement of a criminal statute, applied retroactively, operated precisely like an ex post facto law" and therefore violated the petitioners' due process right of fair warning. Id. at 353. Just as legislatures are barred by the Ex Post Facto Clause from passing laws that unforeseeably enlarge criminal statutes, so too are courts "barred by the Due Process Clause from achieving precisely the same result by judicial construction." Id. at 353-54.

Marks v. United States clarified the due process implications of judicial constructions which unforeseeably expand the reach of statutes. Petitioners in that case were convicted of transporting "obscene materials." After petitioners' arrest, but before their trial, the Supreme Court expanded the definition of "obscenity" in Miller v. California, 413 U.S. 15 (1973). The trial court read jury instructions using the new, broader standard instead of the prior, narrower definition of obscenity that was in place at the time of the petitioners' activities. Marks, 430 U.S. at 190-91. The United States Supreme Court held that these jury instructions denied petitioners due process of law because, at the time of their actions, they had "no fair warning that their products might be subjected to the [Miller] standards." Id. at 195. As such warning is "fundamental to our concept of constitutional liberty," it is "protected against judicial action by

6

the Due Process Clause of the Fifth Amendment." Id. at 191-92. Therefore, the Court overturned the petitioners' convictions not because the jury instructions violated any specific category of ex post facto law delineated in Calder, but because of the fundamental right of all defendants to have "fair warning" that their contemplated conduct is illegal.

In Rogers v. Tennessee, the Unites States Supreme Court reasserted that the due process limitations upon retroactive application of judicial decisions do not "incorporate jot-for-jot the specific categories of Calder," but rather apply "in accordance with the more basic and general principle of fair warning." 532 U.S. at 459. According to the Court, Bouie's "rationale rested on core due process concepts of notice, foreseeability, and, in particular, the right of fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct. And we couched its holding squarely in terms of that established due process right. . . ." Id. (citation omitted); see also United States v. Lanier, 520 U.S. 259, 266 (1997) ("[D]ue process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope . . . .").

In sum, the central question to be asked in deciding whether retroactive application of a judicial decision violates due process is whether the defendant had fair warning that his conduct was criminal at the time he engaged in it. Armstrong essentially argues he had no such fair warning because Honeycutt, the only Indiana decision on point, declared that his conduct was not criminal.

The fair warning requirement does not rise and fall on Armstrong's reliance upon Honeycutt. First, Honeycutt was wrongly decided. And this is the first opportunity this Court has had to say as much because transfer was not sought in that case. "That courts have rendered decisions later deemed erroneous by higher authority does not entitle criminal defendants to the benefits of those mistakes. Bouie applies only to unpredictable shifts in the law, not to the resolution of uncertainty that marks any evolving legal system." Unites States v. Burnom, 27 F.3d 283, 284-85 (7th Cir. 1994) (internal citation omitted); see also Hagan v. Caspari, 50 F.3d 542, 547 (8th Cir. 1995) (questioning whether "a state supreme court's overruling of an

intermediate appellate court decision ever can constitute a change in state law for due process purposes."). But more importantly, we are of the view that anyone reading Indiana Code section 9-26-1-1 could easily have concluded that Honeycutt was contrary to the statute's plain meaning. Focusing as it did upon "person struck," the opinion did not take into account that the statute required drivers "involved in an accident that results in the injury or death of a person" to take a variety of actions, only of one which involved the "person struck." For example Armstrong did not, as the statute required, "[i]mmediately stop the vehicle at the scene of the accident or as close to the accident as possible" or "[i]mmediately return to and remain at the scene of the accident until [he did] the following: (A) [give his] name and address and the registration number of the vehicle [he] was driving." Further, over six decades ago, construing the predecessor to Indiana Code section 9-26-1-1, this Court declared: "[t]he purpose of the statute is to provide prompt aid for persons who are injured or whose property is damaged and to sufficiently establish the identity of the parties so that they and police authorities may know with whom to deal in matters growing out of the accident." Runyon v. State, 219 Ind. 352, 38 N.E.2d 235, 237 (1941); see also Micinski v. State, 487 N.E.2d 150, 152-53 (Ind. 1986) ("We now make explicit what was assumed in Runyon, that knowledge of the fact that an injury accident has occurred is a necessary element of the proof in a prosecution under Ind. Code § 9-4-1-40."). As the Court of Appeals correctly pointed out, "[l]imiting 'accidents' to only those incidents where a person or vehicle is struck undercuts these purposes, as the facts of this case clearly demonstrate." Armstrong, 818 N.E.2d at 97.

Considering the wording of the statute along with this Court's assessment of the statute's predecessor, Armstrong had fair warning that his conduct—failing to stop after an accident resulting in death—was criminal. Therefore the Due Process Clause of the Fifth Amendment does not bar Armstrong's prosecution for this offense.

We affirm the judgment of the trial court.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.