UNITED STATES of America,

v.

Christopher MORNAN, Appellant.

No. 05–3969.

United States Court of Appeals,
Third Circuit.

Argued June 8, 2006.

Filed: June 30, 2006.

Dennis E. Boyle (Argued), Camp Hill, PA, Counsel for Appellant.

Thomas A. Marino, United States Attorney, Theodore B. Smith, III, Assistant United States Attorney, Chief, Criminal Appeals, Christy H. Fawcett, Assistant United States Attorney, Office of the United States Attorney, Harrisburg, PA, Christopher H. Casey (Argued), Assistant United States Attorney, Office of the United States Attorney, Scranton, PA, Counsel for Appellee.

Before: AMBRO, FUENTES, and NYGAARD, Circuit Judges.

OPINION OF THE COURT

FUENTES, Circuit Judge.

Christopher Mornan challenges the sentence entered by the United States District Court for the Middle District of Pennsylvania on August 19, 2005. Mornan contends that the District Court's sentence is unreasonable under *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and that it violates the *ex post facto* principles of the Due Process Clause and the *Ex Post Facto* Clause of the Constitution. For the reasons set forth below, we disagree and will therefore affirm the judgment of the District Court.

## I. Background

Because we write only for the parties, we only briefly recount the relevant facts. Beginning in approximately 1997, Mornan was involved in a cross-border advance fee telemarketing scheme. Mornan and others placed advertisements in various newspapers representing that loans were available to high-risk borrowers and listing a toll-free number for interested individuals to call for details. When a prospective "borrower" called, he or she was instructed to complete a loan application and subsequently informed by Mornan or another "closer" that the application was approved. The "borrower" was then told to mail a money order (or, later in the scheme, execute a Western Union wire transfer) for a large sum of money, representing payment of "insurance premiums" to guarantee payment on the loan. Once the "borrowers" paid the "insurance premiums," they never received loan proceeds, nor did they receive refunds of the "insurance premiums."

On October 2, 2002, a grand jury returned an 18–count indictment charging Mornan with conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C. § 371 (Count 1); 13 counts of mail fraud in violation of 18 U.S.C. § 1341 (Counts 2 to 14); and four counts of wire fraud in violation of 18 U.S.C. § 1343 (counts 15 to 18).[1] The grand jury later

---

1. Mornan, along with several co-conspirators, was initially indicted by a grand jury in the United States District Court for the Western District of New York. After his arrest, Mornan was dismissed from the original indictment and held for trial on the indictment in the United States District Court for the Middle District of Pennsylvania.

returned a superseding indictment charging Mornan with the same counts.

Mornan's trial took place from April 8 through April 14, 2003. The Government presented, *inter alia*, the testimony of twelve individuals who claimed to be victims of the telemarketing scheme. The jury found Mornan guilty of Counts 1, 4 through 14, and 16 through 18, and further found, by way of special verdict, that Mornan committed the offenses by means of telemarketing. The jury acquitted Mornan of Counts 2, 3, and 15.

The Probation Office compiled a Presentence Investigation Report ("PSR") in preparation for Mornan's sentencing. The PSR alleged that Mornan worked with nine coconspirators, that the crime involved "sophisticated means," that Mornan was an organizer or leader of the criminal activity, and that he was responsible for $557,305 in losses to 752 victims, plus an additional $167,400 in losses to victims who did not file complaints. Defense counsel filed timely objections to these allegations.

The District Court held a sentencing hearing on January 29, 2004, about a year before the Supreme Court's decision in *United States v. Booker.* At the conclusion of the hearing, the District Court found the following: (1) there were nine co-conspirators; (2) Mornan was responsible for $557,305 in losses to 752 victims, plus an additional $167,400 in losses to victims who did not file complaints; (3) Mornan's conduct involved "sophisticated means"; and (4) Mornan was an "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Based on these findings, the District Court added 24 levels to the base offense level of six, bringing Mornan's offense level to 30 and his mandatory Sentencing Guidelines range to 97–

121 months' imprisonment. At the conclusion of the hearing, the District Court overruled Mornan's objections to the calculation of his Guidelines range and imposed an aggregate sentence of 120 months' imprisonment, which was the maximum sentence permitted by statute.

Mornan appealed his conviction and sentence. On June 30, 2005, a different panel of this Court filed a precedential opinion and judgment affirming Mornan's conviction, but vacating his sentence and remanding for resentencing in accordance with the Supreme Court's decision in *United States v. Booker. See United States v. Mornan,* 413 F.3d 372 (3d Cir.2005). On August 18, 2005, the District Court held a sentencing hearing and resentenced Mornan to the previously imposed aggregate 120–month term of imprisonment. On August 22, 2005, Mornan filed his second notice of appeal.[2]

## II. Discussion

■ Mornan's primary argument on appeal is that his sentence should be vacated because, under the factors listed in 18 U.S.C. § 3553(a), "[n]either the circumstances of the offense nor [his] personal history required a sentence of 120 months." (Mornan Br. at 29.)

We review Mornan's sentence for reasonableness. *See United States v. Booker,* 543 U.S. 220, 261, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); *United States v. Cooper,* 437 F.3d 324, 326–27 (3d Cir.2006). At Mornan's resentencing hearing, defense counsel raised two *ex post facto* arguments and also pointed out that after *Booker* the Sentencing Guidelines are "but one factor for the Court to now consider." (JA 2151.) The Government then argued in favor of the imposition of the same sentence previ-

---

**2.** The District Court had jurisdiction over this case under 18 U.S.C. § 3231, and we exercise jurisdiction over the appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

ously imposed or a higher sentence based on numerous grounds, many of which relate to the factors listed in § 3553(a). The District Court ultimately reimposed the 120–month sentence. The District Court stated its reasons for the sentence as follows:

> The Court adopts the pre-sentence report and the guideline applications without change. The fine is waived because of the Defendant's inability to pay. The sentence is within the guideline range. That range does not exceed 24 months. And the Court finds that the sentence of 120 months to be reasonable in view of the considerations expressed in 18 U.S.C. § 3553(a). In that regard, the Court would note that Mr. Mornan operated an extensive large-scale fraud which caused, or attempted to cause, losses of over $700,000.00 to over 750 victims. Mr. Mornan continues to deny any wrongdoing despite the wealth of evidence and the jury verdict against him. And it is unlikely that any of his victims will ever fully be recompensed. The Defendant has a significant prior record. A sentence at the high end of the guideline range appears necessary, not only to punish Mr. Mornan, but to deter him and others from committing similar offenses in the future.

(JA 2161–62.)

Based on our review of the record, we are satisfied that the District Court adequately considered the § 3553(a) factors, applied them to the circumstances present in Mornan's case, and imposed a sentence that was "reasonable" under *Booker*. As the Government points out, the loss attributable to the entire criminal conspiracy was $4,000,000; Mornan's extensive criminal history did not result in criminal history points because his convictions were outside the United States; two of Mornan's convictions involved firearms; Mornan's criminal activity resulted in about 750 victims, far in excess of the 51 necessary for the enhancement on that ground; the victims of the criminal activity were vulnerable and unlikely to be compensated for more than a small proportion of their losses; Mornan showed no remorse and continued to deny his guilt; and Mornan made comments to a potential Government witness that made her fearful to cooperate. (JA 2151–57.)

■ Mornan's brief appears also to argue that the District Court erred when it adjusted his base offense level upward by four levels pursuant to U.S.S.G. § 3B1.1(a) for his role as "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." (Mornan Br. at 31–33.) At oral argument, we requested supplemental briefing from the Government on this issue.[3] In any event, Mornan is precluded from directly challenging the application of this enhancement to his offense level because he did not do so in his first appeal. *See United States v. Pultrone,* 241 F.3d 306, 307–08 (3d Cir.2001).

■ Lastly, Mornan argues that the District Court violated the *ex post facto* principles of the Due Process Clause when it applied *Booker's* remedial holding—approving judicial fact-finding under an advisory application of the Sentencing Guidelines—to his pre-*Booker* criminal conduct. After the parties briefed this issue, but before oral argument, we rejected a similar *ex post facto* argument in *United States v. Pennavaria,* 445 F.3d 720 (3d Cir.2006).[4] In view of our decision in *Pennavaria,* Mornan's counsel declined to press the *ex*

---

3. Mornan's counsel stated subsequently that he was not challenging the District Court's calculation of Mornan's advisory Guidelines range.

4. In *Pennavaria,* the defendant argued that

*post facto* issue at oral argument. We now reject Mornan's ex *post facto* argument pursuant to our holding in *Pennavaria.*[5]

## III. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.

the ex *post facto* principles of the Due Process Clause would be violated if he received a sentence for pre-*Booker* conduct that was above the maximum of the applicable Guidelines range calculated without any judicial fact-finding. We rejected that argument, holding that "the Supreme Court in *Booker* clearly instructed that both of its holdings should be applied to all cases on direct review," and that the defendant "had fair warning that [his criminal conduct] was punishable by a prison term up to [the statutory maximum sentence]" and that "his sentence could be enhanced based on judge-found facts as long as the sentence did not exceed the statutory maximum." 445 F.3d at 723–24. Here, Mornan had fair warning that he faced a statutory maximum sentence of ten years' imprisonment for each of the 15 counts of which he was found guilty. Mornan also had

fair warning that his sentence could be enhanced based on judge-found facts as long as the sentence did not exceed the statutory maximum.

5. Mornan also argues that the *Ex Post Facto* Clause itself bars the application of *Booker's* remedial holding approving judicial fact-finding under an advisory application of the Sentencing Guidelines to his pre-*Booker* criminal conduct. However, because the *Ex Post Facto* Clause, by its terms, is " 'a limitation upon the powers of the legislature and does not of its own force apply to the Judicial Branch of government,' " *Rogers v. Tennessee,* 532 U.S. 451, 456, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) (quoting *Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977)), this argument fails as well.