FILED
United States Court of Appeals
Tenth Circuit

November 15, 2016

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JEREMY GILMORE,

     Defendant - Appellant.

No. 15-3114

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:07-CR-20164-JWL-5)**

---

Branden A. Bell, Assistant Federal Public Defender (Melody Brannon, Federal Public Defender, with him on the briefs), Topeka, Kansas, for Defendant-Appellant.

James A. Brown, Assistant United States Attorney (Barry R. Grissom, United States Attorney, with him on the brief), Topeka, Kansas, for Plaintiff-Appellee.

---

Before **HOLMES**, **SEYMOUR**, and **PHILLIPS**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

The district court denied Jeremy Gilmore's motion to reduce his sentence in accordance with a retroactive sentencing amendment because his term of imprisonment was not "based on" a guidelines sentencing range, as is required by 18 U.S.C. § 3582(c)(2). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

In May 2009, Mr. Gilmore was convicted of conspiracy to distribute and possess with intent to distribute methamphetamine. Due to his two prior drug felonies, the district court sentenced him to a mandatory life sentence. After we affirmed his conviction, Mr. Gilmore filed a motion to vacate under 28 U.S.C. §2255, claiming his trial counsel was ineffective. The district court granted Mr. Gilmore's motion, but instead of setting aside the conviction it ordered the parties to meet and confer regarding an appropriate remedy. At a status conference, the two sides informed the court they had agreed that a sentence reduction to 168 months would be fair. Mr. Gilmore's attorney gave the following explanation for how the two sides reached this total:

> And the way that we got there, at least I got there, was that Mr. Gilmore's original base offense level was 34; he was then given a two-point enhancement for obstruction and another two-point enhancement for a firearm enhancement. I think if Mr. Gilmore had had appropriate counsel that those enhancements would not have stayed on the presentence report, and I think the Court was well

aware of the type of representation Mr. Gilmore had at his sentencing.

. . . .

. . . Which would have left him at a base level of 34. I think that had Mr. Gilmore had competent representation that an attorney would have walked him in to cooperate with the government very early in the process, so I think that he would have gotten another two-level reduction for acceptance. . . . [T]he government agrees that we don't know that that third point would necessarily have been available, or it might just be a bridge too far for us. That would leave us at a Base Offense Level 32 and a Criminal History Category IV, which puts us at a guideline range of 168 to 210 months, the low end of that range being 168 months. And that's where at least I reached the conclusion that that was an adequate remedy for the lack of competent counsel that Mr. Gilmore had in this case.

Aplt. App. at 44-45.

The two parties reduced their agreement to writing and submitted it to the district court for its approval. The agreement was intended "to achieve a result that may have occurred had the defendant not received ineffective assistance of counsel." *Id*. at 51. The sentencing agreement provided that Mr. Gilmore would admit to knowingly committing one count of conspiracy—the crime for which he was initially convicted—in exchange for the government's agreement, among other things, not to file any additional charges against Mr. Gilmore and its proposal of 168 months as the appropriate disposition of the case. While the sentencing agreement recognized that it "d[id] not offend the now advisory guidelines," it did not expressly reference any particular guidelines range. *Id*. at

The court accepted the parties' agreement, agreed to be bound by it, and resentenced Mr. Gilmore to 168 months of imprisonment.

In July 2014, almost two years later, Mr. Gilmore filed a motion, pursuant to 18 U.S.C. § 3582(c)(2), to reduce his sentence in accordance with Amendment 782. Amendment 782 was an amendment to the sentencing guidelines that was made retroactive by the Sentencing Commission in 2014. It reduced by two levels the offense levels assigned to the quantities that trigger the statutory mandatory minimum penalties in U.S.S.G. § 2D1.1. Sentencing Guidelines for the United States Courts, 79 Fed. Reg. 44,973 (Aug. 1, 2014). When the government and Mr. Gilmore recalculated his sentence, they had used § 2D1.1 to determine his base offense level to be 32. Mr. Gilmore was therefore seeking a reduction to a base offense level of 30. The drop in his base offense level would have reduced his guideline sentencing range from 168-210 months to 135-168 months. Accordingly, Mr. Gilmore sought a reduction in his sentence from 168 months to 135 months, the low end of the guideline range.

To be afforded a sentencing reduction under § 3582(c)(2), a defendant must show that his term of imprisonment was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." Mr. Gilmore argued that his 168 month sentence mirrored the low end of a guideline sentence corresponding to a total offense level of 32 and a criminal history category of IV, and was thus "based on" a guidelines sentencing range. The district court, relying

-4-

on *Freeman v. United States*, 564 U.S. 522 (2011), dismissed Mr. Gilmore's motion, concluding it lacked jurisdiction to reduce his sentence.[1]  It reasoned that it was not authorized to reduce Mr. Gilmore's sentence because it was based on the parties' stipulation and not on "'a sentencing range that [had] subsequently been lowered' by the Sentencing Commission."  Aplt. App. at 109 (quoting 18 U.S.C. § 3582(c)(2)).  This appeal followed.

## II

Mr. Gilmore contends the district court erred in concluding that it lacked authority to reduce his sentence.  As a general rule, a district court "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c).  "However, Congress has established a few narrow exceptions to this rule of finality," *United States v. Williams*, 575 F.3d 1075, 1077 (10th Cir. 2009), including the one at issue here.  "We review de novo the scope of a district court's authority in a proceeding under § 3582(c) . . . ."  *Id.* at 1076.

---

[1] Mr. Gilmore does not contend the district court erred in dismissing his motion for lack of jurisdiction rather than denying it on the merits for failure to state a claim, and the government is silent on this question.  *Cf. United States v. Taylor*, 778 F.3d 667, 669-71 (7th Cir. 2015) (discussing an intra-circuit split and concluding that "a district court has subject-matter jurisdiction to consider a motion for relief under 18 U.S.C. § 3582(c)(2) regardless of whether the moving defendant is actually eligible for such discretionary relief").  Our resolution of this appeal in no way turns on the answer to this question, which we do not address.

"To ask whether a particular term of imprisonment is 'based on' a Guidelines sentencing range is to ask whether that range serves as the basis or foundation for the term of imprisonment." *Freeman*, 564 U.S. at 535 (Sotomayor, J., concurring). In *United States v. Graham*, 704 F.3d 1275, 1277-78 (10th Cir. 2013), we explained the divided nature of the Court in *Freeman* with respect to this issue. Then, applying the rule from *Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those [m]embers who concurred in the judgment on the narrowest grounds."), we held that "Justice Sotomayor's concurrence is the narrowest grounds of decision and represents the Court's holding." *Graham*, 704 F.3d at 1278. We stated:

> Justice Sotomayor's concurrence charted a middle ground between the plurality and the dissent. She observed Rule 11(c)(1)(C) permits the parties to "agree that a specific sentencing range is the appropriate disposition of the case." *Id.* at 2696-97 (Sotomayor, J., concurring). If the parties do so, she reasoned, the imposed sentence is "'based on' the agreed-upon sentencing range." *Id.* Accordingly, when the Rule 11(c)(1)(C) plea is based on a Guideline sentencing range that is retroactively amended, the defendant is entitled to the amendment. *Id.* at 2697-99. But, when the plea deal does not "use" or "employ" a Guideline sentencing range, the defendant is not entitled to the benefit of the amendment. *See id.*

*Id.* at 1277-78.

Justice Sotomayor's reasoning is applicable here. In her view, "the term of imprisonment imposed by a district court pursuant to [a (C) agreement] is 'based

-6-

on' the agreement itself, not on the judge's calculation of the Sentencing Guidelines." *Freeman*, 564 U.S. at 534 (Sotomayor, J., concurring). She explained that a court can say a (C) agreement was "based on" a sentencing range when it "call[s] for the defendant to be sentenced within a particular Guidelines sentencing range," *id.* at 538, or when the agreement makes "clear that the basis for the specified term is a Guidelines sentencing range applicable to the offense to which the defendant pleaded guilty." *Id.* at 539. Thus, if a plea agreement does not itself use or employ a guideline sentencing range, she concluded, then the defendant is not entitled to the benefit of a retroactive Sentencing Guideline Amendment.

Mr. Gilmore disputes the applicability of *Freeman*, contending that the sentencing agreement in this case is fundamentally different than a (C) agreement. In *Freeman*, he says, Justice Sotomayor's concurrence was contingent on the fact that a (C) agreement binds the court to a specific sentence, and the sentence it imposes is therefore automatically "based on" the agreement. But here, Mr. Gilmore maintains, the sentencing agreement did not bind the court. Instead, it stated that "[i]t is solely within the Court's discretion whether to accept the proposed agreement and sentence as an appropriate disposition of the case." Aplt. App. at 51.

But context matters. The agreement in this case was produced after the district court held in a § 2255 proceeding that Mr. Gilmore had received

-7-

constitutionally deficient representation in his initial trial. The court ordered the parties to meet and confer about an appropriate remedy. The two sides agreed on a remedy—Mr. Gilmore would admit to knowingly committing the crime for which he had already been convicted in exchange for a term of imprisonment he would have received from a plea agreement had his counsel been constitutionally adequate.[2] While the parties did discuss the guidelines in their negotiations, a "term of imprisonment imposed by the district court . . . is not 'based on' . . . background negotiations." *Freeman*, 564 U.S. at 538 (Sotomayor, J., concurring). The written sentencing agreement neither called for Mr. Gilmore to be sentenced within a sentencing range nor made clear that a guideline sentencing range was the basis for the parties' stipulation that a 168 month term of imprisonment was appropriate. The only discernable difference between the written agreement in this case and a (C) agreement is that the two parties labeled it a sentencing agreement instead of a plea agreement. Just like a (C) agreement, Mr. Gilmore admitted guilt in exchange for the government "agree[ing] that a specific sentence [was] the appropriate disposition." Fed. R. Crim. P. 11(c)(1)(C).

---

[2] We note that the proposed remedy was entirely consistent with the purpose of the Sixth Amendment. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1388-89 (2012) (explaining that a Sixth Amendment remedy "must 'neutralize the taint' of a constitutional violation . . . while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution." (quoting *United States v. Morrison*, 449 U.S. 361, 365 (1981))).

Mr. Gilmore overstates the importance of the section in the agreement acknowledging that the district court was under "no obligation to accept the proposed agreement and sentence." Aplt. App. at 51. This fact does not distinguish the sentencing agreement from a (C) agreement. When the government and a defendant enter into a (C) agreement, a district court is always free to either "accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." Fed. R. Crim. P. 11(c)(3)(A). Thus, the parties in this case merely made explicit what is true of every (C) agreement, that a court is always free to reject it. The sentencing agreement's overt recognition of this fact thus does not differentiate it from a (C) agreement, but instead likens it to one.

In *Freeman*, Justice Sotomayor noted that because a court is bound to give effect to the parties' agreed upon term of imprisonment once it accepts a (C) agreement, the term of imprisonment imposed pursuant to a (C) agreement is, for purposes of § 3582(c)(2), "based on" the agreement itself. 564 U.S. at 535-36. It was this fact—that a court is bound to enter the (C) agreement's term of imprisonment once it accepts the agreement—that was dispositive for Justice Sotomayor. In this case, during the resentencing hearing, the district court stated, "[T]he Court is prepared to and does hereby accept that sentencing agreement and agree to be bound to sentence in accordance with it." Aplt. App. at 65. Just as in the context of a (C) agreement, the district court was bound to sentence Mr.

-9-

Gilmore according to the terms of the sentencing agreement once it decided to accept the agreement as the appropriate remedy in the habeas case. In sum, we see no meaningful difference between the sentencing agreement here and the (C) agreement analyzed in *Freeman*.

For the foregoing reasons, we hold that Mr. Gilmore's term of imprisonment was not "based on" a guidelines sentencing range. We AFFIRM.