People v Krull (2022 NY Slip Op 04783)

People v Krull

2022 NY Slip Op 04783

Decided on August 02, 2022

Appellate Division, First Department

PITT, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 02, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Judith Gische
David Friedman, Lizbeth González, Julio Rodriguez III, Bahaati E. Pitt

Index No. 831/15 Appeal No. 16163 Case No. 2020-01210 

[*1]People of the State of New York, Respondent.
v
Vadimir Krull, Defendant-Appellant.

Defendant appeals from an order of the Supreme Court, Bronx County (Lester B. Adler, J.), entered on or about January 13, 2020, which adjudicated him a level two sex offender pursuant to the Sex Offender Registration Act (Correction Law art 6C).

Robert S. Dean, Center for Appellate Litigation, New York (Alexandra L. Mitter of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (John T. Komondorea and Rafael Curbelo of counsel), for respondent.

PITT, J. 

This appeal presents the question of whether in determining defendant's risk level under the Sex Offender Registration Act (SORA) (Correction Law art 6C), Supreme Court erred in assessing defendant 10 points under risk factor 12 for his refusal to accept responsibility for his criminal conduct. For the reasons that follow, we conclude that a defendant who has invoked his Fifth Amendment right against self-incrimination and has a direct appeal pending should not be assessed points under risk factor 12. Considering this conclusion, and in view of defendant's consistent refusal to incriminate himself and the pending status of his direct appeal, the assessment of 10 points under this factor amounts to a violation of defendant's Fifth Amendment rights.
On January 30, 2017, after a jury trial in which he testified in his own defense, defendant was found guilty of eight crimes: two counts of rape in the second degree (Penal Law § 130.30 [1]), two counts of criminal sexual act in the second degree (Penal Law § 130.45 [1]), three counts of sexual abuse in the second degree (Penal Law § 130.60 [2]), and one count of endangering the welfare of a child (Penal Law § 260.10 [1]). On March 13, 2017, defendant was sentenced to an aggregate term of three years' imprisonment to be followed by five years of postrelease supervision on the felony counts.[FN1]
Before he was sentenced, defendant was interviewed by the Department of Probation. According to the presentence interview report, dated March 8, 2017, defendant denied his guilt and indicated that he planned to appeal his conviction. Upon being taken into custody by the Department of Corrections and Community Supervision (DOCCS), defendant again denied his guilt and informed the department that he was going to appeal his conviction.
On January 29, 2018, defendant commenced a six-month Sex Offender Counseling and Treatment Program (SOCTP). For the first five months of the program, he received high scores for his participation, despite his continued denial of guilt of the offenses. However, on June 24, 2018, defendant was removed from the program for poor participation and progress because he failed to accept responsibility for the acts that led to his conviction.
In a letter to the Board of Examiners of Sex Offenders (the Board) dated April 10, 2019, defendant provided information that he thought should be considered before a risk level recommendation was made. In the letter, defendant indicated that his removal from the SOCTP was based [*2]on his refusal to accept responsibility for the crimes he was convicted of—an action that was assertedly taken at the advice of counsel on the grounds that defendant testified at his trial and had an outstanding appeal.
On October 25, 2019, the Board issued a Risk Assessment Instrument (RAI), which assessed defendant a total of 80 points, and recommended that he be classified as a level two sex offender. As relevant here, the Board assessed defendant 15 points under risk factor 12 of the RAI for not accepting responsibility for the criminal act and for his expulsion from sex offender treatment. In making its determination, the Board acknowledged defendant's submissions and noted the length of his participation in the program before being removed. Nevertheless, the Board indicated that a downward departure from defendant's presumptive level two calculation was not warranted.
Before the SORA hearing that took place on January 13, 2020, the parties submitted papers indicating their respective positions on the Board's recommendation. The People submitted a letter concurring with the recommendation and requesting that the court assess defendant 80 points and adjudicate him a level two sex offender. In response, defendant challenged the points assessed under risk factor 12 and, in the alternative, sought a downward departure to level one. Defendant argued that he should not be assessed points under risk factor 12 because he was actively and productively participating in sex offender treatment and was only removed from the program because he would not admit guilt as to the underlying offenses. Importantly, defendant reiterated the statement in his pre-hearing letter to the Board that he refused to admit guilt because he had testified at trial and his direct appeal remained pending. As to a downward departure, defendant argued that even if points were assessed under risk factor 12, the circumstances underlying those points did not reflect the reason that he would not accept responsibility—that he could not admit guilt without waiving his constitutional right against self-incrimination.
On January 13, 2020, the SORA court conducted a hearing to determine defendant's risk level. At the hearing, defendant objected solely to the assignment of points under risk factor 12. In response, the People requested that the court assess defendant 15 points under risk factor 12 for failing to take responsibility and for his expulsion from the program.
The court found that clear and convincing evidence established that defendant committed the acts underlying his convictions. As the Board's point assessments for risk factors 2, 4, and 5 (25 points under factor 2 for sexual intercourse and oral sexual conduct with the victim, 20 points under factor 4 based on the continuing course of sexual misconduct, and 20 points under factor 5 because the victim was between the ages of 11 and 16) were undisputed, the court agreed with the parties that defendant was properly assessed [*3]points under those factors. However, the court departed from the Board's recommendation with respect to risk factor 12. While it agreed with the Board and the People that it was appropriate to assess defendant points under this factor, the court concluded that defendant should be assessed 10 points for failing to accept responsibility, rather than the 15 recommended.
After assessing 10 points to defendant for risk factor 12, the court found that defendant's total score was 75 points, making him a presumptive level two sex offender. Defendant argued for a downward departure, to which the People objected. The court declined to depart from the level two designation, noting that the "mitigating factors cited by the defendant were adequately taken into account by the [RAI] or outweighed by aggravating factors, including the seriousness of the underlying offense."
The court also recounted for the record two points it had made to the parties in chambers: (1) if the conviction were reversed and the case remanded for a new trial, the prosecution would have to factor into its decision whether to retry the case, the fact that defendant would have served his time, and (2) "if there is a second trial, . . . the judge in the second trial has the absolute discretion, if the defense counsel makes a motion in limine, to prevent the jury from hearing about this admission of responsibility."
On appeal, defendant contends that the court erred in adopting the Board's recommendation that he receive points under risk factor 12 for failure to accept responsibility. He argues that the assessment of points under risk factor 12 violated his Fifth Amendment right against self-incrimination because he could not admit to the underlying conduct without facing a potential perjury prosecution in light of his trial testimony and his direct appeal was pending. In the alternative, defendant contends that this Court should find that the reasons underlying his failure to accept responsibility are a basis for granting a downward departure.
In response, the People contend that as it is undisputed that defendant never took responsibility for his actions and was expelled from the SOCTP, the court correctly found that he posed a greater risk of reoffending, based on clear and convincing evidence and thus was properly assessed points under risk factor 12 for failing to take responsibility.
Citing the United States Supreme Court's opinion in McKune v Lile (536 US 24 [2002]), the People also contend that the choice that defendant was confronted with is not one that is necessarily forbidden by the Constitution. Nevertheless, in an argument raised for the first time on appeal, the People further contend that defendant's Fifth Amendment argument is unavailing because DOCCS offers immunity to an offender who participates in the SOCTP for the purpose of circumventing the concern that defendant now raises. They assert that when defendant entered SOCTP, DOCCS policy provided that "no written [*4]or oral statement made by a program participant in conjunction with treatment services rendered in connection with the SOCTP may be used against the inmate in any subsequent criminal proceeding in accordance with the Limits of Confidentiality, Partial Waiver of Confidentiality and Acknowledgment form." Therefore, the People contend, defendant's statement during treatment could not be the basis for a perjury prosecution or be used against him during his appeal or any subsequent retrial. Moreover, the People assert, defendant cannot cite one instance of the State prosecuting an SOCTP participant for admitting crimes or accepting responsibility.
Whether points should be assessed under risk factor 12 when a defendant has invoked his Fifth Amendment right against self-incrimination in light of his trial testimony and where his direct appeal is pending presents a somewhat novel issue for this Court. The Commentary to factor 12 indicates that genuine acceptance of responsibility for the underlying crime is critical to a defendant's success in a sex offender program (see Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 15-16 [2006]). Thus, in most circumstances, where a defendant refuses to accept responsibility, it is proper for a SORA court to assess 10 points under risk factor 12 (see e.g. People v Lozada, 197 AD3d 1073 [1st Dept 2021]; People v Hatcher, 132 AD3d 407 [1st Dept 2015], lv denied 26 NY3d 915 [2016]). However, under the unique circumstances of this case, we find that the SORA court erred in assessing 10 points to defendant under risk factor 12.
Although the circumstances of defendant's underlying conviction are very serious—a course of action against a child that took place over many years—the three-factor analysis set forth in People v Gillotti (23 NY3d 842, 861 [2014]) for determining whether a downward departure is warranted does not adequately account for his situation: he has a direct appeal pending and has asserted his Fifth Amendment right against self-incrimination.
The specific flaw in the analysis is clearly demonstrated in the SORA court's conclusion here—a defendant who was assessed points under risk factor 12 when invoking his right against self-incrimination can be denied a downward departure based on a discretionary determination concerning the seriousness of his crime, despite satisfying the first two prongs of the downward departure analysis and the conviction being the subject of a pending direct appeal. Under these circumstances, defendant was presented with a Hobson's choice: the assessment of 10 points under risk factor 12 for maintaining his Fifth Amendment right against self-incrimination in the event his appeal was successful and the case remanded for a new trial or incriminating himself by accepting responsibility for something he wholeheartedly wished to deny and risking that his admissions would be used in any subsequent retrial and that he would be subject to potential perjury charges [*5]for contradicting his trial testimony.
The People contend that defendant's failure to accept responsibility went beyond simply preserving a Fifth Amendment right against self-incrimination, because defendant affirmatively professed his innocence on numerous occasions. This argument is unavailing. Not only does it suggest that this Court should place a subjective limit on how a defendant can express his Fifth Amendment privilege, but it also fails to fully consider the procedural posture of defendant's underlying case. As noted above, defendant was convicted after a jury trial in which he not only maintained his innocence as to all charges but also testified on his own behalf. Throughout his participation in the SOCTP, defendant continued to deny the acts that led to his conviction, given his pending appeal. This resulted in defendant's expulsion from the SOCTP after completing approximately five of the six months of the program, being assessed 15 points under factor 12, and having his presumptive risk raised from a level one to a level two.
At the SORA hearing, the court departed from the Board's recommendation of 15 points under risk factor 12, but assessed defendant 10 points. Although defendant's direct appeal was still pending, the court denied defendant's request for a downward departure, and highlighted the seriousness of the underlying offense in support of its decision.
Importantly, the assessment of 10 points under risk factor 12 raised defendant's RAI score to 75 points and resulted in his being adjudicated a level two sex offender. Thus, the issue before this Court is whether defendant's assessment of a higher risk level for failing to admit the conduct underlying his conviction constituted an adverse consequence of such severity that he was, in effect, compelled to provide incriminating testimony in violation of his Fifth Amendment rights.
The Supreme Court addressed a similar issue in McKune v Lile (536 US 24), which offers some guidance here. However, since McKune was a plurality decision, its holding should "be viewed as that taken by those Members who concurred in the judgments on the narrowest grounds" (Marks v United States, 430 US 188, 193 [1977] [internal quotation marks omitted]). Accordingly, Justice O'Connor's concurrence describes the applicable contours of the Fifth Amendment's protections.
Justice O'Connor emphasized that some penalties imposed on a person because of their failure to incriminate themselves "are so great as to compe[l] such testimony, while other[] [penalties] do not rise to that level" (McKune, 536 US at 49 [internal quotation marks omitted]). One of the two types of so-called "penalty cases" in which the penalties imposed were of a degree that compelled self-incrimination included three cases involving "[a] choice between incriminating oneself and being deprived of one's livelihood" (id. at 50). The second implicated the "First Amendment right to run for office and to participate in political associations[*6]" (id.)
Justice O'Connor found that the penalties at issue in McKune—including transfer from a medium - to a maximum-security part of the prison and restrictions on the personal property that the respondent could keep in his cell, as well as reductions in visiting privileges, canteen spending limits, and prison employment earnings—were less significant than the sufficiently coercive consequences present in the "penalty cases" (id. at 50-51).
Critical to the decision in McKune were the considered penalties' connection to prison administration and the respondent's status as an incarcerated convicted sex offender (see e.g. id. at 36 ["A broad range of choices that might infringe constitutional rights in a free society fall within the expected conditions of confinement of those who have suffered a lawful conviction."] [Kennedy, J., plurality opinion]). In contrast, here, since the penalties defendant faced were implemented upon his release from prison, our analysis does not require an identical consideration of other legitimate penological objectives. Moreover, in view of the lack of finality of defendant's direct appeal, the inquiry is only whether the penalties imposed rose to a level likely to compel self-incrimination.
While the People contend that the choice defendant was confronted with is not the type that is always forbidden by the Constitution, the potential life-long impact of a level-two adjudication cannot be ignored. As stated above, defendant was forced to choose between, on the one hand, exercising his Fifth Amendment right against self-incrimination and being assessed points under risk factor 12, and, on the other, admitting responsibility for the acts that led to his conviction after so far maintaining his innocence and risking that those admissions would be used against him in a potential retrial or form the basis of a perjury charge. Ultimately, the penalty imposed on defendant when presented with this choice is that he was assessed 10 points under risk factor 12 and adjudicated a risk level two sex offender.
The difference between a level one and level two sex offender adjudication is substantial and illustrative of why the penalty is so great as to compel self-incrimination. If defendant were classified as a level one sex offender, he would be required to register annually for a period of 20 years from the date of initial registration (see Correction Law § 168-h), but his personal information would not be listed in a publicly available database. However, as a level two sex offender, defendant would be required to register annually for life (see Correction Law § 168-h), and his photograph, address, place of employment, physical description, age, and distinctive markings would be included in a public database (see Correction Law § 168-q).[FN2]
Since a SORA court must determine the offender's risk level by "either accepting the Board's recommendation or rejecting that recommendation in favor of a different risk level classification [*7]supported by the evidence presented at the hearing" (Gillotti, 23 NY3d at 852), the differences between these levels and the potential life-long implications of defendant's choice are significant. Thus, they are more akin to the penalties discussed in Justice O'Connor's concurrence than to those faced by the respondent in McKune.
Based on the foregoing, the SORA court should not have assessed 10 points to defendant under risk factor 12 in the first instance. We hold that when a defendant has invoked his Fifth Amendment right against self-incrimination and (1) his trial testimony denied the allegations and (2) he has a pending direct appeal, the SORA court should not assess any points under risk factor 12 (see People v Fews, 175 AD3d 570 [2d Dept 2019], lv denied 34 NY3d 908 [2020]; People v Britton, 148 AD3d 1064 [2d Dept 2017], affd on other grounds 31 NY3d 1019 [2018]; People v Grigg, 112 AD3d 802 [2d Dept 2013], lv denied 22 NY3d 865 [2014]; cf. People v Kearns, 68 AD3d 1713, 1714 [4th Dept 2009]).
Unlike cases where a defendant's appeal is pending but there is no attempt on the appeal to withdraw or vacate his plea of guilty (e.g. People v Howard, 190 AD3d 773, 773 [2d Dept 2021], lv denied 37 NY3d 906 [2021]), or where a defendant's denial of responsibility was made despite his guilty plea (e.g. People v Noyes, 108 AD3d 1202, 1203 [4th Dept 2013], lv denied 22 NY3d 857 [2013]), here, defendant's admissions would be detrimental in any potential retrial if his conviction were reversed. Although the People attempt to mitigate the seriousness of this risk by asserting that DOCCS has granted SOCTP participants such as defendant immunity from prosecution for any statements made during the program, this argument is unavailing and, moreover, is unpreserved, as it was raised for the first time on appeal. Not only were the SOCTP guidelines not made part of the record, but the People also failed to provide any case law or state any legislative authority in support of their argument. The People have accordingly not presented this Court with any authority for this proposition, and it is unclear whether this purported immunity would be binding on the District Attorney's Office. In any event, the People's argument is belied by the SORA court's assertion that the use of any SOCTP statements against defendant in a future prosecution would be at the absolute discretion of the judge in the second trial.
Accordingly, the order of the Supreme Court, Bronx County (Lester B. Adler, J.), entered on or about January 13, 2020, which adjudicated defendant a level two sex offender pursuant to the Sex Offender Registration Act (Correction Law art 6C), should be modified, on the law, to the extent of reducing the adjudication to that of a level one offender, and as so modified, affirmed, without costs.
Order, Supreme Court, Bronx County (Lester B. Adler, J.), entered on or about January 13, 2020, modified, on the law, to the extent of reducing the adjudication to that [*8]of a level one offender, and as so modified, affirmed, without costs.
Opinion by Pitt, J. All concur.
Gische, J.P., Friedman, Gonzalez, Rodriquez, Pitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 2, 2022

Footnotes

Footnote 1: Defendant was sentenced to one-year prison terms for the sexual abuse in the second degree and endangering the welfare of a child counts to run concurrently with the terms for the felony counts.

Footnote 2: "Background information including all of the sex offender's crimes of conviction that require him or her to register pursuant to this article, modus of operation, type of victim targeted, the name and address of any institution of higher education at which the sex offender is enrolled, attends, is employed or resides and a description of special conditions imposed on the sex offender" is also included in the public subdirectory (see Correction Law § 168-q).