UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys, Huff and AtLee
Argued by videoconference

COMMONWEALTH OF VIRGINIA

                                        MEMORANDUM OPINION[*] BY
v.    Record No. 0890-22-3             JUDGE RICHARD Y. ATLEE, JR.
                                        OCTOBER 25, 2022

ERIC WALKER THORNHILL

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeatts, Judge

Nathan D. Freier, Assistant Commonwealth's Attorney, for
appellant.

Ruth Hocker, Assistant Public Defender, for appellee.

Under Code § 19.2-398, the Commonwealth of Virginia appeals the decision of the Circuit

Court of the City of Lynchburg ("trial court") to grant Eric Thornhill's motion to suppress. On

appeal, the Commonwealth argues that the trial court erred by determining that Thornhill's

post-*Miranda*[1] statements were elicited in violation of his Fifth Amendment rights. The

Commonwealth argues that the trial court applied the wrong test to determine whether the

post-*Miranda* statements were admissible. For the following reasons, we agree and reverse.

I. BACKGROUND

In a Commonwealth pre-trial appeal, we view the evidence in the light most favorable to the

defendant, the prevailing party below, and we grant him all reasonable inferences from that

evidence. *Green v. Commonwealth*, 65 Va. App. 524, 531 (2015).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

In August 2021, Officer Skillman, a trainee officer with the Lynchburg Police Department, and Officer Kirby, Skillman's training officer, stopped a vehicle driven by Thornhill. Thornhill consented to a search of his vehicle. While Thornhill stood behind the vehicle with Officer Kirby, Officer Skillman conducted a search of the vehicle, and he discovered a baggy of white powder on the front floorboard of the vehicle.

After discovering the baggy, Officer Skillman placed Thornhill in handcuffs and asked, "mind saying what that is in the front seat there in the white baggy, the baggy with the white stuff in it?" Thornhill responded quietly. Officer Skillman asked Thornhill to repeat himself, and Thornhill repeated, "probably cocaine." Officer Skillman told Thornhill that he had also found marijuana in the car, but he told Thornhill not to worry about that. Thornhill then volunteered that he had a "weed thing," used to smoke weed, in his pocket. Officer Skillman searched Thornhill and asked if Thornhill had anything else in his car or on his person, and Thornhill said no. After Officer Skillman finished his search of Thornhill's person, he put Thornhill in the police car and went to complete the search of Thornhill's car.[2]

After searching the vehicle, Officer Skillman read Thornhill the *Miranda* warnings from a card. He asked if Thornhill "got that," and Thornhill nodded and mumbled, "yeah." Officer Skillman then asked, "so you said a minute ago, what was in that the front seat in the white baggy?" During the ensuing questioning, Thornhill admitted that the baggy contained cocaine, the cocaine belonged to him, and that he put it on the floorboard when he saw the police.

Before trial, Thornhill moved to suppress the statements he made both before and after receiving *Miranda* warnings. Following a hearing, at which Officer Skillman testified, the trial

---

[2] While Skillman completed the search, his training officer informed him that Thornhill's statements made while he was in handcuffs could not be used. The training officer suggested going back and questioning him again. The training officer also discussed other scenarios and how Skillman could have dealt with them.

court concluded that Thornhill was in custody when questioned and that the pre-*Miranda* statements should be suppressed.[3]  Regarding the post-*Miranda* statements, the trial court found that the officers did not deliberately conduct a two-step interrogation and there was no "intent to circumvent the Constitutional and procedural safeguards."  Nevertheless, based on *Missouri v. Seibert*, 542 U.S. 600 (2004), the trial court concluded that the post-*Miranda* statements were taken in violation of Thornhill's constitutional rights.  Therefore, it also suppressed Thornhill's post-*Miranda* statements. The Commonwealth now appeals.

## II. ANALYSIS

The Commonwealth appeals the trial court's ruling as authorized by Code § 19.2-398(A)(2). It argues that the trial court applied the incorrect standard when it suppressed Thornhill's post-*Miranda* statements.  The Commonwealth contends that when viewed under the appropriate standard, the post-*Miranda* statements were voluntary and should not have been suppressed.

### A. *Standard of Review*

"For purposes of a Fifth Amendment self-incrimination challenge, [v]oluntariness is a question of law, subject to independent appellate review."  *Secret v. Commonwealth*, 296 Va. 204, 225 (2018) (alteration in original) (quoting *Avent v. Commonwealth*, 279 Va. 175, 195 (2010)).  "Subsidiary factual questions, however, are entitled to a presumption of correctness," *id.* (quoting *Avent*, 279 Va. at 195), and will not be reversed unless they "are plainly wrong or without evidence to support [them]," *id.* at 226 (alteration in original) (quoting *DeMille v. Commonwealth*, 283 Va. 316, 323 (2012)).

---

[3] The Commonwealth does not challenge the ruling regarding the pre-*Miranda* statements.

B. *The trial court did not apply the proper standard.*

The Fifth Amendment of the United States Constitution guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." This privilege extends to individuals who are interrogated while in police custody. *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). Thus, before law enforcement officers may question an individual who is in custody, the officers must provide the individual with the "now famous *Miranda* warnings." *Kuhne v. Commonwealth*, 61 Va. App. 79, 87 (2012). Statements obtained during custodial interrogation without *Miranda* warnings "generally will be subject to exclusion." *Anderson v. Commonwealth*, 279 Va. 85, 90-91 (2010).

Occasionally, however, an individual in custody will make incriminating statements without *Miranda* warnings and later provide the same or additional incriminating statements after receiving the warnings. *Kuhne*, 61 Va. App. at 87. The United States Supreme Court has twice considered such a scenario.

In *Oregon v. Elstad*, 470 U.S. 298 (1985), the police questioned a suspect about a burglary, without first providing *Miranda* warnings. The suspect, who was in custody, admitted to being present during the crime. *Id.* at 301. Later, the police read the suspect his *Miranda* rights before questioning him again. The suspect waived his rights and again confessed to the crime. *Id.* at 301-02. The Supreme Court considered whether the questioning of the suspect without first providing *Miranda* warnings rendered the subsequent post-*Miranda* statement involuntary. The Court concluded that

> absent deliberately coercive or improper tactics in obtaining the
> initial statement, the mere fact that a suspect has made an
> unwarned admission does not warrant a presumption of
> compulsion. A subsequent administration of *Miranda* warnings to
> a suspect who has given a voluntary but unwarned statement

ordinarily should suffice to remove the conditions that precluded admission of the earlier statement.

*Id.* at 314.

The Supreme Court revisited the issue in *Missouri v. Seibert*, 542 U.S. 600 (2004). In *Seibert*, police officers intentionally applied a two-step interrogation technique. *Id.* at 609. Using this technique, officers would try to obtain a confession without *Miranda* warnings. If successful, officers would then provide the required *Miranda* warnings and attempt to elicit the same statements that had been made without the required warnings. *Id.* at 609-10. Although a majority of the Court concluded the practice was unlawful, no single opinion spoke for the Court.

A plurality of four justices concluded that the threshold issue in every two-step interrogation is "whether it would be reasonable to find that in these circumstances the warnings could function 'effectively' as *Miranda* requires." *Id.* at 611-12. The plurality set out a multi-factor test to assess whether the "midstream" warnings could be effective.[4] *Id.* at 615.

Justice Kennedy, however, thought that the plurality approach was too broad because it would apply to both intentional and unintentional two-step interrogations. *Id.* at 621 (Kennedy, J., concurring). Thus, he concurred on "narrower" grounds. *Id.* at 622. Under his approach, if the police deliberately used a two-step approach, then the "postwarning statements that are related to the substance of the prewarning statements must be excluded absent specific, curative

---

[4] The factors set out by the plurality are:

> the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first.

*Seibert*, 542 U.S. at 615.

steps." *Id.* at 621. But if the police did not *deliberately* conduct a two-step interrogation, then the "admissibility of postwarning statements should continue to be governed by the principles of *Elstad*." *Id.* at 622.

The trial court here mistakenly determined that the plurality opinion in *Seibert* controlled. It incorrectly referred to the plurality opinion as the "majority" and concluded that the plurality opinion modified the *Elstad* rule. Thus, it applied the plurality's multi-factor test to determine whether the "midstream" *Miranda* warnings were effective. But both this Court and the Supreme Court of Virginia have adopted Justice Kennedy's approach as the governing rule in Virginia. *Kuhne*, 61 Va. App. at 90-91; *Secret*, 296 Va. at 222.[5] Thus, "unless police deliberately employ the 'question first' strategy, the admissibility of postwarning statements is governed by *Elstad*." *Kuhne*, 61 Va. App. at 91.

Here, the trial court concluded that the officers did not deliberately employ a two-step interrogation. It recognized that Skillman was still in training and that there "wasn't any intent by the officers to circumvent the Constitutional and procedural safeguards of [Thornhill's] constitutional rights." Because the trial court concluded that it was not a deliberate strategy, admissibility of the postwarning statements is governed by *Elstad*. The trial court did not apply *Elstad*; therefore, it did not apply the correct legal standard.

C. *Under the governing standard, the statements were voluntary and should not have been suppressed.*

Under *Elstad*, "'absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a

_____

[5] When the United States Supreme Court issues a split decision, "and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those members who concurred in the judgment on the narrowest grounds.'" *Marks v. United States*, 430 U.S. 188, 193 (1977). Both Courts in *Secret* and *Kuhne* concluded that Justice Kennedy's approach was the narrowest approach. *Secret*, 296 Va. at 222; *Kuhne*, 61 Va. App. at 90-91.

presumption of compulsion' with regard to any later postwarning statement." *Kuhne*, 61 Va. App. at 92-93 (quoting *Elstad*, 470 U.S at 314). The relevant inquiry is whether "the second statement also was voluntarily made." *Id.* at 93 (quoting *Elstad*, 470 U.S. at 318). "The test for determining voluntariness is whether the statement was the 'product of an essentially free and unconstrained choice by its maker.'" *Secret*, 296 Va. at 226 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)).

Viewing "the surrounding circumstances and the entire course of police conduct," *Kuhne*, 61 Va. App. at 93 (quoting *Elstad*, 470 U.S. at 318), we find that the statements Thornhill made after he received the *Miranda* warnings were voluntary. Officer Skillman was polite and courteous in his questioning of Thornhill—so much so that another officer commented on it in a separate body camera video of the events. The officers did not use any force, threats, or intimidation. There is no suggestion that Thornhill was under the influence of any substance or otherwise impaired.

And "there is no warrant for presuming coercive effect where [Thornhill's] initial inculpatory statement, though technically in violation of *Miranda*, was voluntary." *Elstad*, 470 U.S. at 318. "A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." *Id.* at 314. Thornhill's decision to "speak after being informed of his rights is . . . highly probative." *Id.* at 318. Even the trial court recognized that if *Elstad* was the "end of the analysis," a different conclusion than suppression was required. Accordingly, we conclude that Thornhill's post-*Miranda* statements were voluntarily made.[6]

---

[6] Thornhill argues that his waiver was not knowingly made because the officer used the pre-*Miranda* statement to obtain the post-*Miranda* statement, which was a serious concern discussed by Justice Kennedy in his *Seibert* concurrence. Justice Kennedy recognized that such a practice showed the "temptations for abuse inherent in the two-step technique." *Seibert*, 542 U.S. at 621. Despite this concern, Justice Kennedy distinguished between deliberate and non-deliberate

III. CONCLUSION

The record, viewed under the appropriate legal standard, compels the conclusion that the post-*Miranda* statements should not have been suppressed. Consequently, we reverse the ruling suppressing the statements and remand the matter to the circuit court for further proceedings.

*Reversed and remanded.*

---

uses of the two-step process. He recognized that *Elstad* was a "balanced and pragmatic approach" to deal with the many innocent reasons a two-step situation may occur. *See, e.g.*, *id.* at 620 ("An officer may not realize that a suspect is in custody and warnings are required. The officer may not plan to question the suspect or may be waiting for a more appropriate time."). That is precisely what occurred here, where a new trainee officer was still learning the ropes.

Furthermore, in making this argument, Thornhill focuses heavily on the fact that his waiver of rights was not fully informed because it was confusing and he did not know that his pre-*Miranda* statements could not be used against him. But the Supreme Court has specifically rejected that argument and has "never embraced the theory that a defendant's ignorance of the full consequences of his decisions vitiates their voluntariness." *Elstad*, 470 U.S. at 316. Nor has it required officers to advise a defendant that prior statements could not be used against him, finding such a warning "neither practicable nor constitutionally necessary." *Id.*